RECEIVED
DEC 05 2005
CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | Case No. 02-320(1)JRT/FLN |
| ANDY R. BACCAM, | § | CV 05-2800 JRT |
| | | Honorable John R. Tunheim |
| Defendant. | § | |

**MOTION TO VACATE SENTENCE**
**PURSUANT TO 28 U.S.C. § 2255**

1. **Name and location of court which entered the sentence under attack:** United States District Court for the District of Minnesota

2. **Date of judgment of conviction:** April 17, 2003

3. **Length of sentence:** 248 months imprisonment; four years supervised release

   **Sentencing Judge:** Honorable John R. Tunheim

4. **Nature of offense or offenses for which you were convicted:** Possession with the intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count One); Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two).

5. **What was your plea?** Guilty

6. **What kind of trial?** N/A

7. **Did you testify at trial?** N/A

8. **Did you appeal from the judgment of conviction?** Yes

9. **If you did appeal, answer the following:**
   (a) **Name of Court:** Eighth Circuit Court of Appeals
   (b) **Result:** Appeal dismissed
   (c) **Date of result:** July 13, 2005

SCANNED
DEC 06 2005
U.S. DISTRICT COURT ST. PAUL

**10-11. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?** No

**12. <u>GROUNDS FOR RELIEF</u>**

<u>Facts and Procedural History</u>

On August 31, 2002, at approximately 9:20 p.m., Minnesota State Tropper Martinson ("Martinson") was patrolling near Worthington when she observed a vehicle on the shoulder of the road. Martinson pulled up behind the vehicle and shined a spotlight on the driver's side mirror; with the aid of the spotlight, Martinson noticed that there was an occupant in the driver's seat. According to Martinson, she exited her patrol car, approached the passenger side of the vehicle, and noticed Andy R. Baccam ("Baccam") sitting in the driver's seat holding a gray semiauto-[1/] matic handgun in his right hand. Because she was approaching the vehicle from the passenger side and Baccam was looking over his left shoulder, according to Martinson, she was not seen by Baccam. Once Martinson returned her patrol car, she radioed for back-up (but failed to alert the dispatcher that Baccam was in possession of a firearm), at which time Baccam pulled into traffic and she followed. Approximately one-half mile farther, Martinson pulled over Baccam's vehicle.

Allegedly found on the passenger seat of the vehicle after

---

1/ Tropper Martinson's report—or any of the discovery for that matter—fails to specify how it was that she was able to see Baccam holding a gray handgun from outside the vehicle without a flashlight, yet she needed a spotlight to determine that someone was in the vehicle.

the stop was the following: a Ruger 9mm handgun and three small bags of methamphetamine weighing 27.97, 27.65 and 11.81 grams, respectively. An official fingerprint analysis provided negative results for finger- and/or palmprints.

On October 16, 2002, a federal grand jury returned a three-count indictment against Baccam, charging him with (1) possession with intent to distribute in excess of 50 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and (3) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Baccam retained E. David Reyes ("Reyes") to serve as defense counsel.

Reyes was told by Baccam, several times, that Baccam did not know that there was a firearm in his vehicle when he was stopped on August 31, 2002. See Declaration of Andy R. Baccam ("Baccam Decl.") (attached). Indeed, Baccam's friend, Terry Entiger ("Entiger"), was in possession of the vehicle on that day from 2:00 p.m. until 8:30 p.m. Id. Reyes was advised of another individual who may have placed the firearm in the vehicle, Jesse Baccam (defendant's brother) who regularly used the vehicle. Id.

On November 19, 2002, Baccam appeared before the Magistrate Court for hearing on a motion to suppress evidence. Baccam testified under oath that he was not aware that there was a firearm in the vehicle and that he did not handle a firearm any time during the stop conducted by Martinson.

Following said hearing, Baccam was able to contact Entiger who informed Baccam that he (Entiger) was the one who had placed the firearm in the vehicle when he borrowed and returned the vehicle only forty minutes before the firearm was discovered. Baccam Decl. Entiger claimed to have forgotten that he had put the firearm in the vehicle and failed to retrieve it. Id.

Naturally, Baccam relayed this information to Reyes and asked that Reyes interview Entiger in order for Reyes to make a record of this exculpatory evidence. Id. Reyes, however, responded by explaining to Baccam that federal law makes no distinction between knowing and unknowing possession of a firearm that is found in close proximity with narcotics. Id.

Reyes interviewed neither Entiger nor Jesse Baccam.

Baccam was advised by Reyes to plead guilty because there existed no available defense to the charges brought on by the government. Baccam wanted to challenge the two counts dealing with possession of the firearm, but on account of Reyes' information that knowledge was not an element, Baccam followed Reyes' advice and decided to accept the government's proffered plea agreement.

On December 23, 2002, Baccam appeared before the Court to enter a plea of guilty. Baccam's guilty plea was premised on the plea agreement reached with the government. Under the terms of the agreement, Baccam agreed to plead guilty to counts One and Two of the indictment. Baccam also agreed to waive his right to appeal and challenge his sentence in a collateral attack. The

government agreed to dismiss Count Three.

Although the Court began the hearing by declaring its purpose to "assure[] ... that you understand the nature of the charge," no such assurance was gained. Plea Trans., at 2. Baccam was appearing before the Court as a twenty-one-year old individual who had dropped out of school. Id. at 4. After the government stated the facts it believed it could prove at trial, the following exchange took place between the Court and Reyes:

> [Court] Anything that you would like to add about the facts, Mr. Reyes?
>
> [Reyes] Your Honor, my client does contest certain facts, but it doesn't amount to a defense.
>
> He acknowledges that he was there and that the trooper eventually pulled behind him. He doesn't recall having the firearm specifically in his hand, and there were no fingerprints found on the weapon.
>
> [] he also contests the issue as where in the car the items were found. He recalls the narcotics being under a seat as opposed to being on the seat. And he does not recall the firearm being there.
>
> However, he acknowledges that once the items were found together; it's basically under federal case law, as long as the items were found together, they could be used.

Plea Trans., at 9-10.

During the Court's admonishment of the rights Baccam was waiving by pleading guilty, the Court stated: "And if the United States does not present sufficient evidence on any of the elements of the charges, you can be found not guilty without presenting any kind of evidence. Id. at 19. But at no time did the Court, government, or Reyes explain, describe, or refer to the elements.

Baccam's guilty plea was in response to the Court's question:

> [Court] Mr. Baccam, you were charged in Count 1 of the indictment with possession with intent to distribute methamphetamine, in violation of United States law; and you were charged in Count 2 of the indictment with possession of a firearm during a drug trafficking crime. How do you plead to those charges, guilty or not guilty?
>
> [Baccam] Guilty.

Id. at 21.

On April 17, 2003, Baccam was sentenced to an imprisonment term of 248 months, a term predicated on the Court's finding that Baccam qualified as a career offender and a sixty-month consecutive sentence resulting from the § 924(c) conviction.

Baccam filed a pro se notice of appeal. Reyes, in turn, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). See United States v. Baccam, 414 F.3d 885, 886 (8th Cir.2005). A three-judge panel 2/ enforced the appellate waiver and dismissed the appeal on April 17, 2003.

This section 2255 motion follows.

---

2/ Judge Donald P. Lay, however, wrote a concurring opinion. Baccam, 414 F.3d at 887. Judge Lay (who has been presiding on the Eighth Circuit Court of Appeals longer than anyother judge now sitting) wrote an eloquent opinion "[t]o highlight the limited efficacy of an inflexible federal criminal justice policy that responds to the epidemic of drug crimes without adequately addressing the root cause of this epidemic—drug addiction." Id. This concurring opinion is clearly in response to the facts of this case: Baccam suffered a serious drug dependency and was sentenced to over twenty years in prison for conduct obviously inspired by this illness.

**CLAIM ONE**

BACCAM'S SENTENCE OF 248 MONTHS IMPRISONMENT VIOLATES THE FIFTH AMENDMENT SINCE BACCAM DID NOT ENTER HIS GUILTY PLEA VOLUNTARILY, BUT DID SO BASED ON AFFIRMATIVE MISINFORMATION BY REYES REGARDING MENS REA ELEMENT OF COUNT TWO.

Baccam is entitled to section 2255 relief since his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.

Although Baccam entered into a plea agreement containing a provision expressly waiving the right to file a section 2255 motion, the Court must consider the merits of the two claims raised herein, claims challenging the voluntariness of Baccam's guilty plea. Should the Court find Baccam's plea constitutionally infirm, the entire plea agreement must be deemed invalid, a fortiori, and the § 2255 waiver could not be enforced. See DeRoo v. United States, 223 F.3d 919, 923 (8th Cir.2000)(waiver of § 2255 relief does not preclude argument that waiver was involuntary or result of ineffective assistance of counsel). This Court has acknowledged as much in its order granting defendant's application to proceed in forma pauperis on direct appeal, although defendant's plea agreement contains the § 2255 waiver, there are exceptions to enforcing such a waiver. See Order (filed 7/22/03), at 2 (citing United States v. Stubbs, 279 F.3d 402 (6th Cir.2002)(reviewing sentence despite waiver of appellate rights because waiver was not knowing and voluntary)).

Additionally, the instant due process claim is not procedurally barred despite being raised now for the first time. To be sure,

insofar was this claim of involuntary guilty plea incorporates a claim of ineffective assistance of counsel (Claim Two), no default has been committed. See United States v. Kaczynski, 239 F.3d 1108, 1114 (9th Cir.2001); United States v. Brown, 183 F.3d 740, 743 (8th Cir.1999)(ineffective assistance of counsel claim not cognizable on direct appeal and must be brought under § 2255).

Because a defendant waives many constitutional rights by pleading guilty, a guilty plea must be entered knowing and voluntary. See Parke v. Raley, 506 U.S. 20, 29 (1992); Brady v. United States, 397 U.S. 742, 748 (1970)(guilty plea "is a grave and solemn act to accepted only with care and discernment").

"A plea may be involuntary ... because [the defendant] has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976)(citations omitted). Indeed, as the Supreme Court has instructed, the voluntariness requirement is not satisfied unless the defendant receives real notice of the true nature of the crime: "[C]learly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Id. at 645 (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

An attorney's representation that he explained a charge to the defendant is not enough to demonstrate that the defendant understands the nature of that charge. See McCarthy v. United States,

394 U.S. 459, 466-67 (1969). Rather, a district court must personally question the defendant to confirm that he possesses the requisite understanding. Id.; Harvey v. United States, 850 F.2d 388, 395 (8th Cir.1988)("the court should have explained the charges ... instead of relying on counsel").

A defendant's misunderstanding of the charge to which he is pleading guilty can hardly be labeled as a mere technical violation: "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." McCarthy, 394 U.S. at 466 (footnote omitted); accord Harvey, 850 F.2d at 396 ("A true understanding [of the charge] requires a knowledge of the law in relation to the facts of the case").

In the instant case, Baccam's plea of guilty to Count Two of the indictment was to that of 18 U.S.C. § 924(c)(1) which makes it unlawful to possess a firearm in furtherance of a drug trafficking crime. Among the elements the government must prove to sustain a conviction, the government must prove that the defendant had knowledge of the use of the firearm to establish a violation of section 924(c). United States v. Oakie, 12 F.3d 1436, 1440 (8th Cir.1993); see also United States v. Santeramo, 45 F.3d 622, 623 (2nd Cir.1995) ("Although section 924(c)(1) does not explicitly describe the mental state required for a violation, knowledge of the facts consti-

tuting the offense ordinarily is implicit in a criminal statute that does not expressly provide a mental element."); United States v. Gutierrez, 978 F.2d 1463, 1467 (7th Cir.1992)("clearly, a person cannot have possession or control of a firearm and allow the firearm to play a role in the crime unless the person knew of the firearm's existence").

Furthermore, "under § 924(c), the 'mere possession of a gun is not enough." United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004). "What is instead required is evidence more specific to the particular defendant showing that his or her possession actually furthered the drug trafficking offense." United States v. Ceballos-Torres, 218 F.3d 409, 414 (5th Cir.2000); see also United States v. Mackey, 265 F.3d F.3d 457, 462 (6th Cir.2001)(stating "that the possession of a firearm on the same premises as a drug transaction would not, without a showing of connection between the two, sustain a § 924(c) conviction"); United States v. Benson, 2003 WL 1874795 (4th Cir.2003)(unreported)(proffered evidence against defendant during guilty plea hearing that demonstrated nothing more than defendant's concurrent possession of narcotics and a firearm was factually insufficient to support conviction for use of a firearm in relation to a drug trafficking crime; evidence did not show that defendant used, carried, or possessed the firearm in furtherance of a drug trafficking crime).

By contrast, Baccam was made to believe that a section 924(c) violation encompasses no more than a firearm and narcotics being "found together." Plea Trans., at 10. Baccam was affirmatively

informed that knowledge of the firearm's presense is not an element to the offense of 18 U.S.C. § 924(c)(1). Baccam Decl.; Plea Trans., at 9-10 (Reyes advising the Court that Baccam contests "the firearm being there," but it makes no difference since "it doesn't amount to a defense" because, "as long as the items were found together, they could be used"). Essentially, Baccam's understanding of the offense was that he need not have any knowledge or intent of the crime of possessing a firearm in furtherance of a drug trafficking crime.

A defendant's ignorance of the mens rea element of the offense with which he is charged renders his guilty plea involuntary as a matter of constitutional law. Henderson, 426 U.S. at 645-46 (defendant did not know that to convict him of second-degree murder state would have to prove he assaulted victim "with a design to effect [] death"). However, in Baccam's case, he was not merely lacking a knowledge of the "true nature of the charge against him," Smith, 312 U.S. at 334 (emphasis added), he was "affirmatively misinformed about a critical element of the charged offense," which results in his involuntary guilty plea. United States v. Brown, 117 F.3d 471, 476 (11th Cir.1997)(defendant entitled to § 2255 relief where he was misinformed about one of the critical elements of the charge against him, which caused him to plead guilty).

Instead of curing Baccam's misguided understanding of the charge, what transpired at the guilty plea hearing only compounded the due process violation. Reyes' statement to the Court that Baccam contested knowledge and intent created "a factual and legal

dispute between" Baccam and the government. North Carolina v. Alford, 400 U.S. 25, 32 (1970). Instead of immediately inquiring as to Baccam's misunderstanding of the charge, "[i]t is evident that the Court failed to determine whether the defendant understood the nature of the charge to which the plea was offered and erred by accepting his guilty plea without first clarifying this important matter." United States v. Suarez, 155 F.3d 521, 525 (5th Cir.1998). The Court at no time addressed the elements of the counts to which Baccam was pleading guilty. In fact, nothing that occurred at Baccam's plea hearing would have informed him that he misunderstood the charge. United States v. Dewalt, 92 F.3d 1209, 1214 (D.C. Cir.1996)("At the plea hearing Dewalt was in the same position ... as a student who emerges from a French movie impressed with how much of it he understood; without some authoritative guidance, he cannot know whether he understood anything correctly").

For those reasons, Baccam entered his plea of guilty involuntarily and in violation of due process.

**CLAIM TWO**

BACCAM'S SENTENCE OF 248 MONTHS IMPRISONMENT VIOLATES THE SIXTH AMENDMENT SINCE COUNSEL DID NOT PROVIDE EFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO INVESTIGATE EXCULPATORY EVIDENCE AND BY AFFIRMATIVELY MISINFORMING BACCAM AS TO THE CHARGES TO WHICH BACCAM WAS ADVISED TO PLEAD.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-prong test that courts are to use in evaluating claims of ineffective assistance of counsel. To obtain a reversal of a conviction, the defendant must prove: (1) that

counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Id. at 687-88.

Although the first prong requires this Court to maintain a presumption of Reyes' adequacy, failure to familiarize himself with the facts and law so that he could provide meaningful advice concerning Baccam's available options—this performance must be deemed well below the objective standard of reasonableness. See Smith v. Lockhart, 921 F.2d 154, 157 (8th Cir.1990); United States v. Easter, 539 F.2d 663, 666 (8th Cir.1976)("A defendant can hardly be faulted in his claim of ineffective assistance of counsel when his [] attorney has little working knowledge of criminal law."); Tinlin v. Parratt, 680 F.2d 48, 50 (8th Cir.1982)("failure to investigate adequately before allowing a defendant to plead guilty can result in material prejudice to the defendant and give rise to a successful charge of ineffective assistance of counsel"). Reyes' description of the "case law" on the courts' construction of section 924(c) evinces his woefully inaccurate understanding, a misunderstanding that he passed on to Baccam. To not deem Reyes' performance below the standard of competency demanded of criminal defense attorneys would be to require nothing of attorneys in the way of a rudimentary "working knowledge of criminal law." Easter, supra.

In the context of a guilty plea, a defendant can satisfy the prejudice prong by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant

would not have pleaded guilty and would have insisted on a trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, Baccam satisfies this low threshold of proof; Baccam has consistently maintained that he did not know there was a firearm in the vehicle and that Martinson could not have seen him holding a firearm simply because he never possessed one. Baccam testified under oath on November 19, 2002, when he swore that he did not possess any firearm when he was stopped in the vehicle on August 31, 2002. Baccam also conducted his own de facto investigation by contacting Entiger who informed Baccam that he (Entiger) was the one who placed the firearm in the vehicle. Baccam Decl. Subsequently, Baccam shared this information with Reyes, asking that he interview Entiger and secure a statement from him. And, of course, there is Reyes' statement during the guilty plea hearing where it is yet again reiterated that Baccam was not aware of the presense of the firearm.

Applying Baccam's continuous claims of unknowing possession of the firearm to the Strickland test it is clear Baccam would not have pleaded guilty and would have insisted on a trial. The prejudice prong of Strickland qualifies the inquiry by the words "but for," as in to take away counsel's deficient performance. See Strickland, supra. By way of application, the question in the present case is whether Baccam would have pleaded guilty had he been made aware of the government's burden of proving knowing possession of the firearm in furtherance of a drug trafficking crime. Baccam's attached declaration, the files and record of the instant case, and

common sense dictate that Baccam has satisfied this prong beyond a preponderance of evidence. That is, with the correct understanding of the substantive law, Baccam believes not only that he was unaware of the presense of the firearm—he also believes that he is innocent of counts Two and Three of the indictment. Baccam's present understanding is that, but for counsel's performance, he would not be serving an additional five years imprisonment, the sentence mandated by the § 924(c) conviction.

Aside from Reyes' affirmative information regarding substantive law, his failure to investigate exculpatory evidence is inexcusable. Reyes failed to interview both Jesse Baccam and Entiger despite that his client informed him that these individuals possess information favorable to the defense. Courts have found an attorney's failure to investigate exculpatory evidence to render ineffective assistance of counsel. See, e.g., Holsomback v. White, 133 F.3d 1382, 1387 (11th Cir.1998)(counsel was ineffective for failing to obtain medical records and consult with physicians which would have led to evidence of defendant's innocence). Once Baccam discovered for himself that it was Entiger who placed the firearm in the vehicle, Reyes was constitutionally required to investigate this exculpatory evidence, which happened to form the basis of the only defense available to Baccam—assistance that was hopelessly ineffective. See Riley v. Payne, 353 F.3d 1313, 1321 (9th Cir.2003)(counsel's failure to interview witness who would have supported theory of defense was ineffective assistance).

For those reasons, Baccam received ineffective assistance of

counsel in violation of the Sixth Amendment.

Consequently, Baccam is entitled to relief under 28 U.S.C. § 2255.

13. **If any of the grounds listed above were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them.** The two claims Baccam raises could not be properly raised sooner than the instant motion because they involve ineffective assistance of counsel.

14. **Do you have any petitions or appeal now pending in any court as to the judgment under attack?** No

15. **Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:**

    (a) **At preliminary hearing:** N/A
    (b) **At arraignment and plea:** E. David Reyes, Esq.
    Sabby & Reyes
    Post Office Box 390222
    Edina, MN 55439
    (c) **At trial:** N/A
    (d) **At sentencing:** E. David Reyes, Esq.
    (e) **On appeal:** E. David Reyes, Esq.
    (f) **In any post-conviction proceeding:** None
    (g) **On appeal from any adverse ruling in a post-conviction proceeding:** N/A

16. **Were you sentenced on more than one count of an indictment, on more than one indictment, in the same court and at approximately the same time?** No

17. **Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?** No

**REQUEST FOR EVIDENTIARY HEARING**

Since the motion, the files and the records of the instant case do not conclusively show Baccam to be entitled to no relief, 28 U.S.C. § 2255 requires that this Court hold an evidentiary hearing. As such, Baccam requests that the Court do so promptly.

**PRAYER FOR RELIEF**

By reason of the foregoing, Mr. Baccam asks that this Court grant the instant motion, vacate his conviction and remand this case, all in the interests of justice.

Sworn to on this 25TH day of November, 2005, at Pekin, Illinois.

Andy R. Baccam
Reg. No. 10647-041
FCI Pekin
Post Office Box 5000
Pekin, Illinois 61555-5000

Appearing Pro Se

**DECLARATION OF ANDY R. BACCAM**

I, Andy R. Baccam, your declarant hereby states:

I am the defendant in the matter of United States v. Baccam, No. 02-320(1)JRT/FLN (D. Minn.) and I retained E. David Reyes (hereinafter "Reyes") as my defense counsel for representation.

On August 31, 2002, when I was pulled over by Minnesota State Trooper Martinson, I was not aware there was a firearm in the vehicle. Ms. Martinson could not have seen me with a gun in that car because I did not possess one.

I explained to Reyes on several occasions that I did not know of a firearm in the vehicle. Reyes advised me that it did not matter whether I knew the firearm was there; as long as the firearm was found along with the narcotics, federal law required that I be found guilty. I contacted my friend Terry Entiger ("Entiger") after a hearing held on November 19, 1002. Entiger informed me he had placed the firearm in the vehicle when he borrowed the vehicle on August 31, 2002, from 2:00 p.m. until 8:30 p.m. and forgot to retrieve the firearm once he returned the vehicle to me. Again, I informed Reyes of the fact that Entiger was claiming responsibility for the firearm, but Reyes reiterated that it did not matter who put the firearm in the vehicle or whether or not I knew it was there. In sum, when I advised Reyes that my brother, Jesse Baccam, could have placed the firearm in the vehicle, Reyes refused to interview him; when I advised Reyes that Entiger admitted to placing the firearm in the vehicle, Reyes refused to interview him as well.

I accepted the government's plea agreement because I believed that the government did not need to prove any knowledge or intent on my part with connection with the firearm.

Had I been informed that this was an element to the offense, I would not have accepted the government's plea agreement, refused to plead guilty, and proceeded to trial. I would have done so because I am innocent of knowing that the firearm was in the vehicle, and I am innocent of using it in any way or in any form.

I make this declaration knowing the penalty of perjury. I am willing to testify as to any matter contained herein.

SWORN to on this 25th day of November, 2005, at Pekin, Illinois.

Andy R. Baccam