UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 02-320 (JRT)
Civil No. 05-2800 (JRT)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br><br><br>ANDY ROGER BACCAM,<br><br>Defendant. | ) | RESPONSE OF ATTORNEY TO BACCAM'S MOTION TO VACATE SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |

This is in response to the Order issued by the Honorable John R. Tunheim dated August 22, 2006, regarding the above-entitled pro se civil matter. I have reviewed the Government's response to Mr. Baccam's motion and concur with the legal arguments and factual statements. Mr. Baccam is unable to establish either that counsel was ineffective or that he was prejudiced by any defect in his counsel's performance.

I first met with Mr. Baccam on September 15, 2002, for an initial client interview in Worthington, Minnesota at the county jail. At that time he was charged in state court with a First Degree Controlled Substance offense. On September 26, 2002, he had his initial appearance at the United States District Court. Around that time we discussed the change of venue and the potential charges, including the fact that he would now be considered a career offender under federal law.

According to my calendar, over the next eight months I met Mr. Baccam on numerous occasions at the Sherburne County Jail, at the United States District Court, at the United States Attorney's Office, and at the United States Marshall's Office. I spoke

with Mr. Baccam by telephone on several other occasions. On each of these occasions we discussed motion strategy, trial strategy and, ultimately, sentencing issues.

I met with Mr. Baccam at various times where we discussed the difficulties of the case. We discussed in particular the manner in which a motion hearing would determine admissibility of evidence and how that could affect the outcome of the case. On these occasions we discussed the elements of possession regarding the firearm and discussed carrying a firearm in relation to a drug offense.

During these meetings, Mr. Baccam and I spoke about the possibility of having a proffer. I prepared Mr. Baccam for the meeting explaining to him that this was clearly an opportunity for him to provide information to the government that if deemed useful could greatly improve his chances at a reduced sentence. He decided this was an option he wanted to pursue.

On October 16, 2002, a proffer session was held between the government and Mr. Baccam. Prior to the meeting I advised Mr. Baccam that he was required to be truthful and that anything he said during the proffer would not be used against him unless he were to testify differently at trial. During the meeting, Mr. Baccam acknowledged that on August 31, 2002, he had been high on methamphetamine for a couple days and was on his way to a drug deal when he started to come down. Feeling tired he pulled his car over and fell asleep. He did not remember waking up and seeing the police car behind him. Nor did he remember having the firearm in his hand. When asked by the agents whether he did not have the firearm in his hand or whether he just did not remember having the firearm in his hand, he stated that he did not remember having the firearm in his hand. During the proffer, Mr. Baccam claimed that someone else had left the firearm in the car but did not deny knowledge that the firearm was in the car.

On November 19, 2002, Mr. Baccam contested the stop and search in a Motion hearing. Mr. Baccam's motions to suppress were denied. During this hearing, Mr. Baccam asserted that the drugs were not in plain view as stated by the Officer who conducted the search but were located under his seat. This Officer testified that the drugs and gun were found together on the front seat. The other Officer who conducted the stop was unwavering in her motion testimony that upon approaching the car she observed Mr. Baccam holding a firearm at an upright angle as if ready to shoot an approaching officer. She had approached the car from the passenger side. Upon seeing the manner in which Baccam was holding the firearm, she immediately returned to her car and requested assistance from other law enforcement officers. The Magistrate Judge found both of the Officers' testimony credible and denied defense motions to suppress.

After the Motion hearing, I met with Mr. Baccam several times to review the case and discuss the plea negotiations. We discussed that the Government would probably call three witnesses in the case. The three witnesses would be the Officer who did the stop, the Officer who conducted the search, and possibly a chemist.

I specifically discussed the elements of the offense and the Government's ability to prove the elements. I explained that the Government would have to prove that Mr. Baccam was engaged in a drug trafficking offense, that he knowingly possessed a firearm, and that he used the firearm when he brandished the firearm or attempted to use the firearm. I informed him that even if someone else placed the firearm in the car without his knowledge, he would still be faced with the testimony of the Officer who observed the firearm in his hand and the second Officer who testified that he found the drugs and firearm together on the front seat. Given this testimony, even if someone else placed the firearm in the car, Mr. Baccam was still in actual possession of the firearm

when the Officer observed it in his hand. Thus any claim that he either did not know of the firearm or did not possess the firearm would be difficult to argue.

I discussed with Mr. Baccam that even if another individual placed the firearm in the automobile and that person were willing to testify at trial that he placed the firearm in the car without Mr. Baccam's knowledge, at trial the jury would be placed in the position of weighing that person's testimony versus both Officers' testimony regarding the firearm.

The Officer who found the drugs and gun claimed to have located both items in plain view on the front seat of the car. Mr. Baccam admitted he was on his way to a drug deal during the proffer session and the amount of the drugs was a distribution quantity. The Officer who conducted the stop has him actually possessing the firearm and brandishing it. I explained to Mr. Baccam that a jury would essentially have to completely discredit the Officers' testimony for him to be successful at trial. Mr. Baccam would be faced with a life sentence if convicted. We discussed that if he decided to go to trial and present this defense, he would risk losing and being sentenced to life in prison.

Regardless of the strength of the government's case, I always instruct clients that they should not enter a plea of guilty if they in fact believe that they are not guilty of the offense charged. I specifically instructed Mr. Baccam that he should not plead guilty unless he in fact was guilty of the offense, and I was obligated to take his case to trial if that were his desire. He chose to accept the plea offer well before the trial date.

Given that the Government had a strong case, I recommended to Mr. Baccam that he accept the offer taking the life sentence off the table. It was also a part of the plea negotiation that Mr. Baccam would be allowed to argue for any departures, including a departure contesting his career offender status and his over-stated criminal history. The

plea agreement effectively took him from life imprisonment if convicted at trial to the ability to argue for a ten-year sentence (the mandatory minimum for the two counts of conviction). I did in fact argue for these departures at sentencing and the court denied these motions.

Mr. Baccam then entered his plea on December 23, 2002, before the court. At that hearing the court reviewed with Mr. Baccam the entire Plea Agreement, the facts of the case, the elements of the offense, and his understanding of the possible ramifications of the plea.

Dated: October 2, 2006

Respectfully submitted,

s/ E. David Reyes

E. David Reyes
Attorney at Law
Attorney ID No. 0204092